480 P.2d 609

In the Matter of the ESTATE of Norena MAREK, Deceased.

Jim MAREK, Beatrice Mathison, Joe Marek and Pat Kazda, Contestants-Plaintiffs-Appellants,

v.

Bonnie KENNEDY and Juanita Sanford, Proponents-Defendants-Respondents.

No. 10662.

Supreme Court of Idaho.

Feb. 1, 1971.

J. H. Felton, Lewiston, for appellants.

Randall & Bengtson, Lewiston, for respondents.

McQUADE, Chief Justice.

Jim Marek, Beatrice Mathison, Joe Marek and Pat Kazda, contestants and appellants, are all children of the testatrix, Norena Marek, and her deceased husband James F. Marek. The proponents and respondents, Bonnie Kennedy and Juanita Sanford, are also children of the testatrix and her husband.

Upon the death of the testatrix, February 11, 1969, her will was presented for probate. The will provided token bequests to the appellants, with a sizable residue to the respondents. Thereafter, appellants contested the will unsuccessfully in probate court, and applied for and received a trial de novo in the district court, with the same result.

Appellants claimed the contested will was the result of undue influence exerted upon testatrix by the respondents.

Testatrix and her husband were predeceased in 1965 by a daughter, who left them and their children a sizable estate. A disagreement over the settlement of that estate left some ill feelings between James F. Marek and his children who appear as appellants herein. Thereafter, appellants saw little of the testatrix.

Attorney Paul C. Keeton testified he prepared a will for testatrix in late 1965 at her request, that will being the one here in

issue. James F. Marek, husband of testatrix, had previously requested that attorney Keeton prepare a will for him. This was also done, and that will's provisions were identical to the will prepared for testatrix in the event testatrix predeceased her husband. These wills were executed in Keeton's office at approximately the same time.

A great deal of testimony was introduced which tended to show the testatrix was dominated by her husband, that he was physically abusive to her and she feared him. There was also testimony of statements testatrix had made tending to show that she was unhappy with the disposition her will made of her property. On the other hand, there was much testimony to the effect that testatrix was unhappy about her relationship with the appellants, and wished to leave the bulk of her estate to respondents.

The district court found there was no evidence to indicate respondents had anything to do with the preparation and execution of the will in issue, and that appellants had failed to sustain the burden incumbent upon them of establishing the existence of undue influence in the preparation and execution of the will.

Appellants contend the district court erred in ruling that certain declarations of testator were hearsay and could not be used for any purpose. Appellants, however, cite no specific examples of such adverse rulings, nor have we found any such rulings by the district court in the record. Of the thirty-two separate pages of the record cited by appellants' brief in their argument supporting this contention, only two instances of hearsay objections by respondents being sustained are to be found. The first of these two sustained objections involved a question from appellants' counsel as to what the testatrix had said in a particular conversation. The witness, Jerome Kazda, replied that testatrix had said her husband had said "I have been mean to you all of these years. Will you forgive me?" An objection to this testimony as

irrelevant and hearsay was sustained. The second of these two objections came when appellants' counsel asked the witness, James Marek, to "Tell the conversation" he had had with testatrix. The following colloquy occurred:

"MR. BENGTSON: I'll object, Your Honor, to the conversation on the grounds that it is purely hearsay.

"THE COURT: Yes, probably is. Objection overruled.

"MR. BENGTSON: And also the objection on the ground of remoteness, Your Honor.

"THE COURT: Well, all right. It is overruled. Go ahead.

"A My mother said that those two girls had my dad under their finger and she had to sign it, it was against her will.

"THE COURT: Now just a minute.

"MR. BENGTSON: Now I'll object on the grounds that that is hearsay, Your Honor.

"THE COURT: You can move to strike it and I will grant—

"MR. BENGTSON: Move to strike for the purpose of entering an objection.

"THE COURT: Yes, on that—that shows no state of mind or anything like that, just simply a bald statement there that is incompetent to prove undue influence. You can't prove undue influence by statements of that kind. The law is very plain on it.

"Q Well, now did she state why she— whether or not she stated why she signed the will?

"MR. BENGTSON: Same objection, Your Honor.

"THE COURT: Same ruling. Objection sustained." (Tr., pp. 162–163).

The majority of the objections which appellants infer in their argument were hearsay objections were actually objections to questions as calling for conclusions by the witnesses. The record gives no support to appellants' contention that the district court

ruled the declarations of testatrix could not be received for any purpose.

 Appellants assign as error the district court's ruling that Paul C. Keeton could testify at trial to matters which he had refused to comment upon when appellants took his deposition prior to trial. Appellants cite no authority and offer no argument in support of the proposition that one claiming the attorney-client privilege during discovery cannot waive that privilege at trial and call the attorney as a witness.

Furthermore, this Court in the case of In re Goan's Estate[1] thoroughly discussed the issue as to whether some of the heirs or persons claiming through the decedent could waive the physician-patient privilege that had arisen between the decedent and her physician prior to her death, and concluded that they could. That rule is equally applicable to the attorney-client privilege. Therefore, appellants could have waived the privilege when Keeton invoked it. They did not. Nor did they apply for relief under the Idaho R.Civ.P. 37(a), which provides in part:

"If a party or other deponent refuses to answer any question propounded upon oral examination, the examination shall be completed on other matters or adjourned, as the proponent of the question may prefer. Thereafter * * * he may apply to the court in which the action is pending * * * for an order compelling an answer."

Having ignored these remedies, appellants will not now be heard to complain that Keeton should not have been allowed to testify.

 Appellants further assign as error the failure of the district court to find that the will of testatrix was the result of undue influence, contending that the judgment of the district court is not supported by the evidence. The district court heard voluminous amounts of testimony during the course of the trial regarding the events surrounding the drawing and execution of testatrix's will. We have thoroughly reviewed the record, and find that though the testimony presented by the opposing parties is often contradictory, there is ample evidence to support the district court's conclusion that testatrix was not subject to undue influence in making her will.

The decision of the district court will not be disturbed on appeal if the findings and judgment of the trial court are supported by substantial and competent, though conflicting evidence.[2]

Judgment affirmed. Costs to respondents.

McFADDEN, DONALDSON, SHEPARD and SPEAR, JJ., concur.

---

1. 83 Idaho 568, 574–576, 366 P.2d 831 (1961).

2. Gardner v. Fliegel, 92 Idaho 767, 771, 450 P.2d 990 (1969); Stephens v. New Hampshire Insurance Co., 92 Idaho 537, 540, 447 P.2d 14 (1968).